UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| D.A. and J.A., on behalf of themselves and as legal guardians and parents of M.A., a minor individual with a disability,<br><br>                        Plaintiffs,<br><br>v.<br><br>MERIDIAN JOINT SCHOOL DISTRICT NO. 2; and INDEPENDENT SCHOOL DISTRICT OF BOISE CITY,<br><br>                        Defendants. | Case No. 1:11-cv-00119-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are four motions: (1) Plaintiffs' Motion to Terminate or Limit the Deposition of M.A., (Dkt. 47); (2) Defendants' Motion for Summary Judgment, (Dkt. 51); (3) Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 53); and (4) Defendants' Motion to Strike Count III of Plaintiffs' Second Amended Complaint. (Dkt. 76) The parties presented oral arguments on the first three of these motions on November 28, 2012. The fourth motion (Defendants' motion to strike) was filed on January 9, 2013. The motion to strike has been fully briefed, is ripe for adjudication, and the Court finds that the matter is appropriate for disposition without oral argument.

Having carefully reviewed the record and otherwise being fully advised in the premises, for the reasons set forth more fully below, the Court finds as follows: (1) Plaintiffs' Motion to Terminate or Limit the Deposition of M.A., (Dkt. 47), will be granted in part and denied in part; (2) Defendants' Motion for Summary Judgment, (Dkt. 51), will be denied; (3) Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 53), will be denied; and (4) Defendants' Motion to Strike Count III of Plaintiffs' Second Amended Complaint, (Dkt. 76), will be granted.

## BACKGROUND

This case involves claims of disability discrimination under the Americans with Disabilities Act ("ADA") and violations of Section 504 of the Rehabilitation Act, with Plaintiffs alleging the two school district defendants failed to provide their son, M.A., with a free and appropriate public education ("FAPE").[1] Plaintiffs are the parents of M.A., an eighteen year-old student diagnosed with Asperger's Syndrome and High Functioning Autism Spectrum Disorder.  M.A. has attended schools in the Meridian Joint

---

[1] The regulations promulgated by the U.S. Department of Education under Section 504 define "appropriate education" as:

> regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36[, which relate to testing and placement of disabled school children].

34 C.F.R. § 104.33(a), and (b). Congress provided a slightly different definition of "free appropriate public education" in the Individuals with Disabilities Education Act. 20 U.S.C. § 1401(9).That definition is not directly applicable in this case.

School District No.2 ("MSD") since 2004, and is currently enrolled there as a student. During the 2009-2010 school year, M.A. was incarcerated in the Ada County Juvenile Detention Center, which is within the boundaries of the Independent School District of Boise City ("BSD"). Plaintiffs' claims relate to the education M.A. received in both school districts.[2]

In 2004, M.A.'s parents moved from California to Idaho and enrolled M.A. in MSD.  Prior to moving to Idaho, M.A. received special education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and M.A.'s parents provided MSD with information related to M.A.'s previous diagnoses of expressive-receptive language disorder, central auditory processing disorder, possibility of dyslexia and dysgraphia, and possibility of Asperger's Syndrome. M.A. received special education while enrolled in MSD under the IDEA from 5th grade (2004-2005) through 8th grade (2007-2008).

In April of 2008, MSD removed M.A. from his Individualized Education Program ("IEP") under the IDEA. M.A.'s parents questioned this decision and obtained an independent evaluation.  The evaluation confirmed the diagnosis of Asperger's Syndrome.  M.A.'s parents provided the diagnosis to MSD and requested that the school district conduct an evaluation of M.A. to assess his eligibility for special education under the IDEA. In September of 2008, MSD found that, rather than being in need of an IEP, M.A. would receive various accommodations at the start of his 9th grade year under Section 504 of the Rehabilitation Act. Plaintiffs allege that the 504 plan was inadequate

---

[2] The Court will refer to MSD and BSD collectively as the "School Districts."

**MEMORANDUM DECISION AND ORDER - 3**

in addressing M.A.'s learning disabilities, inability to communicate, organizational problems, issues with language, self-advocacy, and lack of socialization. Aside from Plaintiffs' claims that MSD failed to adequately address M.A.'s disabilities through the IDEA, Plaintiffs also allege that "M.A. [was] the victim of relentless bullying throughout his enrollment in MSD." (*Pl.s' Second Am. Compl.*, ¶ 26, Dkt. 74 at 6.)

M.A. was incarcerated in the Ada County Juvenile Detention Center ("ACJDC") from April 26, 2009, until September 17, 2010.  During that time, the responsibility for educating M.A. shifted to BSD, which is the school district where the detention facility is located.  After negotiating with BSD over the need for an IEP, M.A.'s parents retained counsel and requested a due process hearing under the IDEA. In lieu of the due process hearing, BSD agreed to perform additional testing, and M.A.'s parents withdrew their request for a due process hearing.

On February 18, 2010, BSD issued an eligibility report finding that M.A. had strong indications of Asberger's Syndrome, but that he was not eligible for special education services, because "[a]t this time, there is no evidence of the adverse effect of [his] disabilities on his current educational performance." (Dkt. 52-48 at 10).

The report also noted that the education provided at the detention facility was highly structured:

> In the event [M.A.] is released from the ACJDC, and placed at another facility, or returns home to the Meridian School District, [M.A.'s parents] may wish to request an evaluation to determine whether his disabilities adversely affect his educational performance, and whether he needs specially designed instruction in order to access and progress in the general education curriculum in the new location.

**MEMORANDUM DECISION AND ORDER - 4**

(*Id.*) In September 2010, M.A. was released from the ACJDC and returned to MSD at Centennial High School. When M.A. returned, his parents requested MSD conduct an IEP evaluation for M.A. The request was deferred for additional observations and a 504 plan was created, affording M.A. certain accommodations. M.A.'s parents' request for a re-evaluation was formally denied in writing on September 27, 2010.  (Dkt. 52-68 at 1). Therein, MSD indicated that the last evaluation completed by BSD was comprehensive, current, and indicated that M.A. did not experience an adverse impact on his education as a result of his disability.  (*Id.*)

On January 17, 2011, M.A.'s parents objected to MSD's conclusion and requested an Independent Education Evaluation ("IEE") under the IDEA. MSD denied the request for an IEE and filed for a due process hearing under the IDEA, 20 U.S.C. § 1415 and 34 C.F.R. § 300.502(b)(2)(i), seeking confirmation from a hearing officer that the evaluation conducted by BSD, and adopted by MSD, was appropriate and that M.A. did not qualify for special education services. (Dkt. 52-85 at 1.)

The matter proceeded before Special Education Hearing Officer Guy Price ("HO Price") on March 21, 2011. HO Price conducted three weeks of hearings and entered a Memorandum Decision and Order dated June 6, 2011. HO Price found that MSD failed to conduct an appropriate evaluation and that M.A. was entitled to an IEE at public expense. HO Price declined to rule on whether M.A. qualified for special education services, stating that such determination was premature until the IEE was completed.  On July 15, 2011, MSD filed a complaint in federal Court pursuant to § 1415(i)(2)(A) of the IDEA seeking judicial review of the hearing officer's decision. That appeal remains

**MEMORANDUM DECISION AND ORDER - 5**

pending before the Court. *See Meridian Joint Sch. Dist. No. 2 v. D.A.*, 1:11-cv-00320-CWD.

While the above administrative proceedings were taking place under the IDEA, believing the accommodations provided by the School Districts were inadequate not only under the IDEA but also under Section 504, M.A.'s parents initiated administrative proceedings under the Rehabilitation Act on February 25, 2011. One month later, on March 24, 2011, M.A.'s parents filed the present action alleging that the School Districts violated M.A.'s rights under the Rehabilitation Act and the Americans with Disabilities Act.

Meanwhile, the Section 504 administrative proceedings initiated by M.A.'s parents were assigned to Hearing Officer Jean Uranga ("HO Uranga"), who consolidated the hearing requests against the two school districts and conducted an extensive evidentiary hearing. On January 23, 2012, HO Uranga issued a decision finding that neither school district violated the Rehabilitation Act.

In connection with the Section 504 administrative proceedings, on March 5, 2012, M.A.'s parents filed two additional actions: one against MSD, Case No. 1:12-cv-00105-CWD; and the other against BSD, Case No. 1:12-cv-00106-CWD. Plaintiffs' Complaints against MSD and BSD sought review of HO Uranga's decision and requested that the Court reverse the hearing officer's decision.

Following the submission of briefing on the merits of Plaintiffs' complaints challenging HO Uranga's decision, and shortly before the Court was scheduled to hear oral arguments on the briefing, each of the School Districts filed a motion to dismiss

arguing that, unlike the statutory framework of the IDEA, there is no private right of action to seek review of a hearing officer's decision under the Rehabilitation Act. The Court agreed, dismissed the two purported administrative appeals, and granted Plaintiffs leave to amend their complaint in this case to raise any substantive discrimination claims under the Rehabilitation Act that may have been present in the improper administrative appeals and not raised in the initial complaint in this case. Plaintiffs chose to file an amended complaint, (Dkt. 74), and the School Districts responded with a motion to strike a newly added count, which seeks recovery under 42 U.S.C. § 1983. (Dkt. 76)

As the above Section 504 administrative proceedings were running their course, on January 20, 2012, M.A.'s parents filed a second request with MSD for a due process hearing under the IDEA. The hearing request alleged that MSD had not timely assessed M.A. After the  parents filed for a due process hearing, MSD issued an eligibility determination finding that M.A. was not eligible for special education under the IDEA. M.A.'s parents challenged that finding as well, which ultimately was consolidated with their January 20, 2012 request. Hearing Officer Edwin Litteneker ("HO Litteneker") conducted an evidentiary hearing over a period of ten days. In a decision dated July 5, 2012, HO Litteneker found in favor of MSD on all issues, concluding that MSD did not violate the IDEA.

On August 16, 2012, M.A. and his parents filed a fourth action in federal court (bringing the total of federal actions involving many of the same underlying factual allegations to five). In their August 16, 2012 Complaint, M.A. and his parents seek

judicial review from HO Litteneker's administrative decision under the IDEA. *See* Case

No. 1:12-cv-00426-CWD. That case remains pending before the Court.

## DISCUSSION

### 1.    Defendants' Motion for Summary Judgment

The School Districts seek summary judgment on six bases: (1) there is no

evidence that the School Districts acted with deliberate indifference; (2) Plaintiffs' claims

are barred by *res judicata*; (3) D.A. and J.A. lack standing; (4) the applicable statute of

limitations bars damages that accrued before March 24, 2009; (5) Plaintiffs failed to

exhaust their administrative remedies; and (6) Plaintiffs are precluded from asserting

claims of bullying. During the hearing on the parties' motions, Defendants withdrew the

arguments that Plaintiffs' claims are barred by administrative *res judicata* and the

principle of exhaustion. Their remaining arguments will be addressed below.

### A.    Legal Standard

Under the recently revised version of Fed. R. Civ. P. Rule 56, "[a] party may move

for summary judgment, identifying each claim or defense—or the part of each claim or

defense—on which summary judgment is sought [and] [t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The rule

also provides that, "[i]f the court does not grant all the relief requested by the motion, it

may enter an order standing any material fact—including an item of damages or other

relief—that is not genuinely in dispute and treating the fact as established in the case."

Fed. R. Civ. P. 56(g).

It is well established that the purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The rule, however, is not a "procedural shortcut," but a "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). However, in evaluating whether the moving party has met this burden, the court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not make credibility findings, *id.*, and direct testimony of the non-movant must be believed, however implausible. *Leslie v. Group ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

If the moving party satisfies its initial burden, the burden shifts to the non-moving party to produce specific evidence to demonstrate the existence of a "genuine issue for trial." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**MEMORANDUM DECISION AND ORDER - 9**

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247-48. There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248. In determining whether a fact is material, the court is required to determine what facts under the substantive claim are necessary to sustain the cause of action. *Id.* The burden, however, always remains on the moving party to demonstrate that it is entitled to judgment as a matter of law, which in turn, requires the moving party provide the court with the legal authorities supporting the party's position.

### B.    Deliberate Indifference

The School Districts argue that they have "met and exceeded its obligation of providing M.A. with an education." (*Motion*, Dkt. 52 at 9).  Moreover, they allege that "[t]ime and time again, Parent made requests upon the Defendants to which Defendants responded accordingly. Defendants evaluated, assessed, observed, listened, modified and remodified in an effort to address M.A.'s educational needs." (*Id.* at 10). The School Districts allege that M.A.'s parents often disagreed with Defendants' course, but insist that their actions do not rise to the requisite level of deliberate indifference to maintain a claim and, thus, the Complaint should be dismissed.[3]

---

[3] Plaintiffs filed an amended complaint after the School Districts filed their motion for summary judgment. The Second Amended Complaint, (Dkt. 74), did not, however, substantially alter Plaintiffs' factual allegations and the arguments applicable to the initial complaint remain applicable to the amended complaint.

**MEMORANDUM DECISION AND ORDER - 10**

Plaintiffs contend that there is ample evidence that "Defendants' actions in this case show an orchestrated effort … to deny M.A. FAPE."  (Dkt. 55 at 8).  Plaintiffs argue that "BSD and MSD have repeatedly, consistently, and intentionally opposed Plaintiffs' efforts to enforce M.A.'s right to FAPE."

Regarding BSD, Plaintiffs point to the district's delay in reviewing M.A.'s 504 plan, and Plaintiffs challenge the adequacy of BSD's review in light of the impact of M.A.'s disability on activities of daily life as deliberate indifference. With regard to MSD, Plaintiffs take issue with several aspects of the district's actions when M.A. returned to MSD from BSD.  First, Plaintiffs take issue with MSD's failure to conduct a reevaluation of M.A.'s 504 plan, opting instead to rely on BSD's eligibility report, despite the fact that MSD "knew that BSD's eligibility report was specifically limited to the Ada County Juvenile Detention Center setting."  (*Response*, Dkt. 55 at 5).

Plaintiffs claim that both school districts resisted evaluating M.A. and, despite being repeatedly provided with professional assessments that M.A. needed a specially designed educational program, the Districts resisted any effort to provide M.A. with more than various accommodations under Section 504.

To establish a violation of Title II of the ADA, a plaintiff must show: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles County Metro. Transp. Auth .,* 114 F.3d 976, 978 (9th Cir.1997) (internal quotations omitted).

**MEMORANDUM DECISION AND ORDER - 11**

To establish a violation of Section 504, a plaintiff must show: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.* (internal quotations omitted). "[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H.,* 513 F.3d 922, 935 (9th Cir.2008); *see also Duvall v. County of Kitsap,* 260 F.3d 1124, 1135-36 (9th Cir.2001) (holding that allegations of intentional discrimination or deliberate indifference are required to state a claim for damages under Section 504 or the ADA). A party seeking to recover damages under Section 504 or the ADA must show "something more" than a denial of FAPE under the IDEA. *Sellers by Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 529 (9th Cir.1998).

Deliberate indifference requires "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall,* 260 F.3d at 1139, *citing City of Canton v. Harris,* 489 U.S. 378, 389 (1988). The public entity's failure to act must be a result of more than mere negligence; rather, it must involve a measure of deliberateness. *Duvall,* 260 F.3d at 1139. The public entity "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Id.* Section 504 and the ADA "create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Id.,* citing *Wong v. Regents of University of California,* 192 F.3d 807, 818 (9th Cir.1999). Therefore, an entity does not "act" by

merely proffering just any accommodation, especially when the accommodation is based on stereotypes of the person's disability. *Id.*  Rather, it must consider the individual's particular needs when investigating what accommodations are reasonable. *Id.*

The parties agree that "there was a continual difference in perspective regarding how M.A. was performing in school between what school staff observed, and what the Parent felt was problematic."  (*Def.s' Stmt. of Facts*, Dkt. 52-92, *Pl.s' Resp.*, Dkt. 55-2). After considering the evidence submitted by the parties in connection with the School Districts' Motion for Summary Judgment, factual issues prevent the Court from concluding that M.A. received a FAPE. This issue, however, is not dispositive. Rather, the key question is whether a genuine issue of material fact exists regarding Defendants' alleged deliberate indifference to M.A.'s federal rights.  Here, also, there are factual issues that prevent the Court from granting summary judgment for the School Districts.

The evidence shows that the School Districts did provide M.A. with various accommodations in an attempt to address his disabilities: providing assessments by a school psychologist, special education teacher, and speech language pathologist; assigning M.A. preferential seating, a quite environment, extra time for testing and written assignments; and frequent meetings between M.A.'s mother and the Section 504 team to discuss his progress. When M.A. transferred back to the MSD, the district convened an evaluation team to determine M.A.'s eligibility for special education services.  The team met twice, and M.A.'s parents and doctors participated in the process. Over the parents' objection, the team ultimately determined that M.A. was not eligible for special education services under the category of Autism Spectrum Disorder because there

was no adverse effect on M.A.'s educational performance, nor did the team see a need for specially-designed instruction.  (Dkt. 52-35, 52-38).  The School Districts argue that their accommodations were sufficient, evidenced by M.A.'s good grades.

The gravamen of Plaintiffs' case is not that the School Districts did *nothing* to help their son. Instead, Plaintiffs cite to several instances of conduct (or lack thereof) by the School Districts evidencing deliberate indifference.  Plaintiffs take specific issue with an alleged lack of diagnostic and observational testing and evaluations. Plaintiffs argue that, despite M.A.'s good grades, M.A. continued to struggle socially, and spent nearly all of his free time completing homework.  Plaintiffs suggest further that M.A. may not have earned the good grades, arguing instead that "MSD has passed M.A. through the system, without providing him the FAPE to which he is entitled."  (*Pl.s' Resp.*, Dkt. 55-2).

The evidence submitted by the parties, including affidavits, administrative hearing testimony, etc., shows that the School Districts did make various efforts concerning M.A.'s educational experience. The record indicates that fact-specific investigations took place, including cognitive tests, input from M.A.'s parents, review of M.A.'s performance in the classroom and input from M.A. himself.  The facts, however, must be viewed in the light most favorable to the nonmoving party and Plaintiffs have submitted substantial evidence from several experts concluding that it was the School Districts' insufficient testing that led to M.A.'s exclusion.  (*See, e.g.*, Dkts. 55-14, 17; Dkts. 55-15, 16, 39; *see also*, Dkt. 55-42).

Plaintiffs' allegations create sufficient factual disputes preventing resolution of their claims against the School Districts on summary judgment. It is for the trier of fact to

**MEMORANDUM DECISION AND ORDER - 14**

determine if Plaintiffs can establish that M.A. was excluded from the School Districts'

services, programs, or activities, or otherwise discriminated against by Defendants, and

whether such exclusion, denial, or discrimination was by reason of his disability. *Duvall,*

260 F.3d at 1135.  Likewise, it is for the trier of fact to determine whether Plaintiffs can

establish the School Districts' alleged deliberate indifference. *Id.* at 1139. *See also Mark*

*H. v. Hamamoto,* 620 F.3d 1090, 1098–99 (9th Cir. 2010) ("Hawaii DOE acted with

deliberate indifference if it knew that Michelle and Natalie needed autism-specific

services in order to enjoy meaningful access to the benefits of a public education and

failed to investigate whether those services were available as a reasonable

accommodation.") Accordingly, Defendants' motion for summary judgment will be

denied on this issue.

### C.    Statute of Limitations

Neither the ADA nor Section 504 of the Rehabilitation Act contains a statute of

limitations. Thus, when the issue is raised, as it is in this case, the Court is required to

look to state law for the applicable limitations period. *See Wilson v. Garcia*, 471 U.S.

261, 266-67 (1985) ("When Congress has not established a time limitation for a federal

cause of action, the settled practice has been to adopt a local time limitation as federal

law if it is not inconsistent with federal law or policy to do so."); *see also*, *Pickern v.*

*Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (applying principle

to the ADA); *Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 554 (9th Cir.

1987) (applying principal to Section 504). The statute of limitations for the most

analogous state law applies. *Pickern*, 293 F.3d at 1137.

**MEMORANDUM DECISION AND ORDER - 15**

Here, the parties disagree on what constitutes the most analogous state law. The School Districts argue that the two-year statute of limitations for personal injury actions applies. *See* Idaho Code § 5-219. Plaintiffs, on the other hand, argue that the three-year statute of limitations for actions "created by statute" applies. *See* Idaho Code § 5-218.

The School Districts do not contend that the shorter two-year statute of limitations would bar any of Plaintiffs' claims. Rather, the School Districts contend that, to the extent any of Plaintiffs' claims survive summary judgment, Plaintiffs should be barred from recovering damages for events that occurred prior to March 24, 2009, which is two years before the date Plaintiffs filed their original complaint in this case.

The School Districts' argument on this issue effectively turns the statute of limitations analysis on its head. Under the traditional analysis, statutes of limitation provide a time frame within which an action must be brought. The analysis begins with the identification of an accrual date. The limitations period is established by moving forward a specific number of years—depending on the applicable statute—from the accrual date. If the complaint was filed after the limitations period expired, the action is time barred.

In contrast to the above analysis, the School Districts start from the date that Plaintiffs' complaint was filed and then move backward, arguing that evidence of damages that occurred two years prior to the filing of the complaint should be barred.

Plaintiffs do not take issue with the way in which the School Districts have raised the statute of limitations argument, apparently assuming that the statute of limitations can be used to bar damages in the manner suggested by the School Districts—an assumption

**MEMORANDUM DECISION AND ORDER - 16**

the Court does not make. Instead, Plaintiffs argue that the three-year statute of limitations applies, which would put all the factual circumstances potentially giving rise to Plaintiffs' claims within the limitations period. In support of their position, Plaintiffs cite *Gowin v. Altmiller*, 663 F.2d 820 (9th Cir. 1981). In that case, the Ninth Circuit held that, because liability for civil rights violations is created by federal statute, "the claims are governed by Idaho Code § 5-218, which provides a three-year statute of limitations for 'an action upon a liability created by statute.'" *Gowin*, 663 F.2d at 822 (quoting *Clark v. Musick*, 623 F.2d 89, 92 (9th Cir. 1980)). The Court's concern with Plaintiffs' reliance on the Ninth Circuit's holding in *Gowin* is that it was issued prior to the United States Supreme Court's ruling in *Wilson v. Garcia*, 471 U.S. 261 (1985), which held that civil rights claims were best characterized as tort actions for personal injuries.

In *Wilson*, the issue before the Court was what state statute of limitations applied to claims brought under 42 U.S.C. § 1983. Looking to the most analogous state law, the Court stated, "[a]lmost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." *Id.* at 272-73. The claim in that case was one for excessive force against a police officer, which the Court stated was "arguably analogous to distinct state tort claims for false arrest, assault and battery, or personal injuries . . . [and] *could also be characterized as one arising under statute*." *Id.* at 273 (emphasis added).

The problem with a piecemeal approach, according to the Supreme Court, was that claims alleged under § 1983 could encompass numerous and diverse topics and

**MEMORANDUM DECISION AND ORDER - 17**

subtopics, including "mistreatment of schoolchildren," and, "[i]f the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply." *Id*. at 273-74. Ultimately, the Court rejected the piecemeal approach in favor of clarity and held that § 1983 claims are best characterized as tort actions for personal injuries for purposes of the statute of limitations analysis. *Id*. at 279 ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983.").

Plaintiffs' position is inconsistent with the Supreme Court's holding in *Wilson*. It is also inconsistent with the holdings of the Idaho Supreme Court, which, based on the Supreme Court's holding in *Wilson*, recognize that the three-year statute of limitations applicable to statutory claims does not apply to claims brought under § 1983. *Henderson v. State*, 715 P.2d 978, 981 (Idaho 1986) ("Previously, the three-year statute of limitations for statutory actions was held to be the applicable statute of limitations for § 1983 actions instituted in Idaho. The court in *Wilson* expressly rejected that rationale, stating that '[t]he relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many states.'").

Based on the above discussion, the Court finds that the two-year statute of limitations for personal injuries under Idaho Code § 5-219 applies in this case. However, the School Districts have provided no authority for the proposition that the statute of

**MEMORANDUM DECISION AND ORDER - 18**

limitations can be applied in the manner suggested—barring all evidence of damages that occurred more than two years before filing of the complaint. The School Districts' motion for summary judgment will therefore be denied on this issue.

### D.    M.A.'s Parents' Standing

M.A.'s parents are named plaintiffs in this case—they filed suit on their own behalf as well as on behalf of M.A. The School Districts argue in their motion for summary judgment that, because M.A.'s parents are not disabled, they lack standing to pursue claims under the Rehabilitation Act on their own behalf. (Dkt. 52 at 15-15.) During oral arguments on the parties' motions, the School Districts clarified that they are only challenging M.A.'s parents' standing to pursue damages outside of those identified by the Ninth Circuit in *Blanchard v. Morton*, 509 F.3d 934, 938 (9th Cir. 2007). The court in *Blanchard* held that a parent has standing to pursue damages under the ADA and the Rehabilitation Act—in an action against a school for the alleged discrimination of the parent's child—"insofar as [the parent] [was] asserting and enforcing the rights of her son and incurring expenses for his benefit."[4] According to the School Districts, "[t]his aspect of [their] Motion for Partial Summary Judgment was to weed out the exact damages, if any, that the Plaintiffs D.A. and J.A. have allegedly incurred." (*See Reply to Pl.s' Mem. In Opp. To Def.s' Mot. For Summ. J.* at 7, Dkt. 57.)

---

[4] While the court in *Blanchard* held that a student's parent could seek damages on her own behalf under the Rehabilitation Act, the court expressly reserved ruling on the question of whether "damages are available for a parent's own emotional distress resulting from the enforcement of a child's educational rights." *Blanchard*, 509 F.3d at 938.

**MEMORANDUM DECISION AND ORDER - 19**

In their complaint, Plaintiffs pray for damages "including, but not limited to, compensatory, compensatory education remedies, and hedonic damages, in an amount to be proven at trial." (*Compl.* at 18, Dkt. 1.)[5] The School Districts argue that M.A.'s parents do not have standing to pursue these types of damages. For the reasons set forth below, the Court finds that M.A.'s parents have standing to pursue compensatory damages under the Rehabilitation Act and the ADA. The issue whether Plaintiffs' prayer for relief seeks particular types of damages unavailable under the Rehabilitation Act and the ADA is premature at this stage in the litigation and will not be addressed in this order.[6]

Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The statute's remedial provision states that "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to *any person aggrieved by* any act or failure to act by any

---

[5] Plaintiffs' Second Amended Complaint contains the same language in the prayer for relief. (Dkt. 74 at 21.)

[6] The Court anticipates that this issue will require additional briefing by the parties before the case proceeds to trial in connection with jury instructions if the question of damages is submitted to the jury.

recipient of Federal assistance or Federal provider of such assistance under section 794."

29 U.S.C. § 794a(a)(2) (emphasis added).[7]

Damages are available under Title VI, and the Ninth Circuit has held that the "aggrieved by" language contained in § 794a of the Rehabilitation Act brings non-disabled individuals like M.A.'s parents within the zone of interest protected by the statute. *See Blanchard*, 509 F.3d at 938; *See also*, *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987) (expenses incurred by a parent of a disabled student related to securing the education that the school district was legally obligated to provide were "foreseeable and appropriate, and rendered [the parent] a suitable person to assert and enforce rights of his daughter"). As the United States Supreme Court has noted, "a parent of a child with a disability has a particular and personal interest in fulfilling 'our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities.'" *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529 (2007) (quoting 20 U.S.C. §1400(c)(1)).[8]

The above discussion demonstrates that M.A.'s parents have standing to seek damages in this case. The underlying question that the School Districts have attempted to raise concerns the *type* of damages that are available under Section 504. The Court

---

[7] The remedies under the ADA are also linked to Title VI of the Civil Rights Act, and the parties agree that the analysis is the same under both statutes.

[8] The Court recognizes that statutory language quoted in *Winkelman* comes from the Individuals with Disabilities Education Act, but the same language also was quoted by the Ninth Circuit in connection with Section 504 of the Rehabilitation Act. *Blanchard*, 509 F.3d at 938.

**MEMORANDUM DECISION AND ORDER - 21**

gathers from the limited briefing on this issue that the question is not settled in the Ninth Circuit. The Court finds, however, that the ruling the School Districts seek is not appropriate at this juncture. It is well-settled that "the demand for judgment is not considered part of [a] claim" for the purpose of testing the sufficiency of a pleading. Wright & Miller, *Federal Practice and Procedure* § 1255 (3d ed. 2004). "[T]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type." *Id.*

Thus, while the Court undoubtedly will need to resolve this issue before the question is submitted to the jury, and the issue may be a good candidate for a ruling in limine, the issue does not appear appropriate in connection with summary judgment proceedings. The prayer for relief—and the type of damages sought therein—is not part of either parties' actual *claims or defenses* which, of course, are the proper province of Fed. R. Civ. P. 56. The School Districts' motion for summary judgment on this issue will be denied.

### E.   Bullying

Plaintiffs allege in their original and amended complaints that M.A. was the victim of "relentless bullying" during his time as a student at MSD.[9] The alleged bullying

---

[9] The allegations in the original and amended complaints differ slightly. Plaintiffs' original complaint alleges that "M.A. was the victim of relentless bullying that began in fifth grade and continued through his ninth grade year when he transitioned to high school. The bullying incidents include, but are not limited to, peer stealing M.A.'s gym clothes, physical attacks which resulted in bruising, constant name calling, and other such emotional and social verbal attacks. Such incidents were reported to Defendant MSD.

included students "stealing his gym clothes, physical attacks which resulted in bruising, constant name calling, and other such emotional, physical, and verbal attacks." (*Pl.'s Second Am. Compl.*, ¶ 26.) Plaintiffs allege that the incidents of bullying were reported to MSD, but that MSD "never took any actions in response to those reports, nor did MSD take any actions to protect M.A. from any bullying." (*Id.*, ¶ 27.) Ultimately, Plaintiffs allege that MSD's failure to take action concerning the incidents of bullying resulted in M.A. being denied his right to a FAPE in the least restrictive environment as required by Section 504 of the Rehabilitation Act. (*See Id.*, ¶ 93.)

MSD argues in its motion for summary judgment that Plaintiffs have not properly pled a claim for peer-on-peer harassment and, as such, any evidence related to bullying should be excluded. (*Mem. In Supp. Of Def.s' Mot. For Sum. J.*, at 20, Dkt. 52.) MSD also argues that, to the extent Plaintiffs have pled a viable claim for bullying, such claim should be barred for three additional reasons: (1) the claim would be barred by the statute of limitations; (2) Plaintiffs have presented no evidence that bullying deprived M.A. from obtaining a FAPE; and (3) there is no evidence that MSD acted with deliberate indifference related to the alleged incidents of bullying. (*Id.*; *See also*, *Reply to Pl.s' Mem. In Opp. To Def.s' Mot. For sum. J.* at 10, Dkt. 57.)

---

M.A. has no friends and is constantly excluded from social and group activities and peer relations in the education setting." (*Compl. and Demand for Jury Trial*, ¶ 23, Dkt. 1 at 8.)

Plaintiffs' Second Amended Complaint alleges that "M.A. has been the victim of relentless bullying throughout his enrollment in MSD. The bullying incidents include peers stealing his gym clothes, physical attacks which resulted in bruising, constant name calling, and other such emotional, physical, and verbal attacks. Those incidents were reported or otherwise known to MSD." (*Pl.s' Second Am. Compl.*, ¶ 26, Dkt. 74 at 6.)

**MEMORANDUM DECISION AND ORDER - 23**

Having reviewed the applicable case law on this issue, the Court finds that Plaintiffs' bullying allegation is neither independent of nor divorced from their disability discrimination claim under Section 504. Moreover, the case law establishes that evidence of bullying severe enough to alter the condition of a student's education and create an abusive educational environment, coupled with knowledge and deliberate indifference by school officials, is one way in which a student may establish a violation of Section 504. For the reasons set forth below, the Court finds that Plaintiffs' original and amended complaints (as well as the discovery provided in this case) sufficiently put MSD on notice that Plaintiffs were alleging a violation of Section 504 based upon MSD's deliberate indifference to the alleged ongoing bullying of M.A. The Court further finds that Plaintiffs have identified materials in the record demonstrating a genuine dispute as to the material facts of Plaintiffs' bullying claim sufficient to defeat MSD's motion for summary judgment on this issue.

### 1.  Legal standard for peer-on-peer harassment

School district liability for peer-on-peer disability-based harassment under Section 504 and the ADA has not been directly addressed by the United States Supreme Court or the Ninth Circuit. The Supreme Court, however, has addressed school district liability for peer-on-peer sexual harassment in violation of Title IX of the Civil Rights Act. In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court held that school districts may be held liable for student-on-student harassment under Title IX if they are "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can

MEMORANDUM DECISION AND ORDER - 24

be said to deprive the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 650.

Based upon the holding in *Davis*, federal courts have extended peer-on-peer harassment claims to the disability context. *See M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 650 (9th Cir. 2005) (holding that a school's deliberate indifference to bullying could result in the denial of a FAPE under the IDEA); *See also*, *T.K. v. New York City Dept. of Educ.*, 779 F. Supp. 2d 289 (E.D. N.Y. 2011).

The federal courts addressing this issue have formulated a five-part test that a plaintiff must satisfy to establish discrimination under Section 504 based on an allegation of peer-on-peer disability-based harassment: (1) the plaintiff is an individual with a disability; (2) he or she was harassed based on that disability; (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment; (4) the defendant knew about the harassment; and (5) the defendant was deliberately indifferent to the harassment. *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

MSD argues that no evidence exists which would satisfy the third, fourth, and fifth factors above. The Court disagrees, and all five factors will be addressed briefly below.

### 2.  Facts in support of Plaintiffs' bullying claim

#### a.  *Disability*

It is undisputed in this case that M.A. suffers from a disability. M.A. was diagnosed with Asperger's Syndrome in May 2008 and the School Districts concede that M.A. is a qualified individual with a disability within the meaning of Section 504. (*See*

**MEMORANDUM DECISION AND ORDER - 25**

*Def.s' Answer to First Am. Compl.*, ¶ 2, Dkt. 75 (admitting Paragraph 5 of Plaintiffs'

Second Amended Complaint, which alleges, inter alia, that "M.A. is a person with

disabilities within the meaning of Section 504 and the ADA").)

> b.  *Harassment based on disability*

In opposition to MSD's motion for summary judgment, Plaintiffs submitted

several excerpts of testimony and other documentary evidence tending to show that M.A.

was harassed on the basis of his disability. Plaintiffs submitted the testimony of two of

M.A.'s peers indicating that M.A. was being bullied at school. The first, a neighbor and

former classmate of M.A. identified as "Minor," testified during the IDEA administrative

proceedings that he witnessed M.A. being called names such as "retard" during physical

education. (Dkt. 55-23.) The student identified as Minor also submitted a written

statement in which the student stated that the things "done to [M.A.] at Centenial [sic]

high school were brutal and cruel." (Dkt. 55-28.) The statement submitted by Minor goes

on to say that "during P.E. boys would steal the cloths out of his P.E. locker [and] when

he would lift weights on the bench press, they would push down on the bar, so he

couldn't lift up." (*Id.*) The statement concludes with the statement that "almost everyone

in his classes bullied him." (*Id.*) The second student, M.A.'s peer mentor identified as

A.C., also testified during the IDEA administrative proceedings and indicated that M.A.

was being bullied "a noticeable amount of times" during the 2011-2012 school year.

(Dkt. 55-3.) Finally, Plaintiffs submitted the administrative hearing testimony of one of

M.A.'s physicians,[10] who testified that, during the investigation of the crime that led to

M.A.'s incarceration, it was learned that M.A. "had been pretty aggressively bullied and

harassed by other students at [Centennial High School]." (Dkt. 55-10.)

### c.  *Severity of harassment*

The third factor a plaintiff seeking damages for peer-on-peer harassment must

show is that "the behavior is so severe, pervasive, and objectively offensive that it denies

its victims equal access to education." *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d

1279, 1288 (11th Cir. 2003) (citing *Davis*, 526 U.S. at 650). In adopting this standard in

the gender discrimination context under Title IX, the United States Supreme Court gave

the following admonition:

> Courts, moreover, must bear in mind that schools are unlike
> the adult workplace and that children may regularly interact
> in a manner that would be unacceptable among adults.
> [citation to amicus brief omitted]. Indeed, at least early on,
> students are still learning how to interact appropriately with
> their peers. It is thus understandable that, in the school
> setting, students often engage in insults, banter, teasing,
> shoving, pushing, and [discriminatory] conduct that is
> upsetting to the students subjected to it.

*Davis*, 526 at 651-52. Given this admonition, the Supreme Court stated that "[d]amages

are not available for simple acts of teasing and name-calling among school children." *Id.*

at 652. The harassing behavior must be "severe, pervasive, and objectively offensive that

it denies its victims the equal access to education." *Id.*

---

[10] The Court has intentionally omitted the names of M.A.'s doctors. The doctor can be
identified by referencing the cited docket number and corresponding document, which
was filed under seal.

**MEMORANDUM DECISION AND ORDER - 27**

A determination of whether conduct rises to the level of actionable harassment "depends on a constellation of surrounding circumstances, expectations, and relationships." *Davis* 526 at 651. According to the Supreme Court, "the most obvious example of student-on-student harassment capable of denying a victim access to education and thus triggering a damages claim would involve overt, physical denial of access to school resources." *Id.* at 650-51. The illustration provided by the Supreme Court in the gender context is where a male student physically threatened a female student daily and thereby successfully prevented the female student from using a computer lab or athletic field. *Id.* "A demonstration of physical exclusion, however, is not the sole means by which a plaintiff can demonstrate deprivation of an educational opportunity." *Hawkins*, 322 F.3d at 1289. Other recognized examples include dropping grades, change in the student's demeanor or classroom participation, becoming homebound or hospitalized due to harassment, or self-destructive and suicidal behavior. *Hawkins*, 322 F.3d at 1289 (discussing and comparing cases where the harassment was deemed sufficiently severe to be actionable under *Davis*).

Here, M.A.'s parents attribute M.A.'s destructive behavior outside of school— including burning down his parents' house and being incarcerated for eighteen months as a result—at least in part to harassment at school. M.A.'s doctor also testified at the administrative hearings that he believed the bullying "triggered th[e] fire setting incident." (Dkt. 55-10.) Under the precedent cited above, M.A.'s destructive behavior, resulting in legal action and lengthy incarceration, constitutes a deprivation of education as contemplated by the Supreme Court in *Davis*. Of course, to successfully state a claim,

**MEMORANDUM DECISION AND ORDER - 28**

Plaintiffs will be required to prove the additional factors that the destructive behavior was caused by the bullying, that MSD knew of the bullying, and that MSD was deliberately indifferent. But, for the purposes of analyzing MSD's motion for summary judgment, when the Court must view the facts in the light most favorable to the nonmoving party, the Court finds that Plaintiffs have presented sufficient evidence to create a genuine dispute as to the severity of the bullying and whether such bullying denied M.A. equal access to education. MSD may strongly disagree with this assessment but, ultimately, "[w]hether bullying rose to [an actionable] level is a question for the fact finder." *T.K. v. New York City Dept. of Educ.*, 779 F. Supp. 2d 289, 318 (E.D. N.Y. 2011).

> d. *The School's Knowledge*

To establish a disability harassment claim, the plaintiff must prove that the defendant knew about the harassment. *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008). The Supreme Court made clear in *Davis* that this is not a negligence standard under which a school may be held liable for actions that it *should have known* about. 526 U.S. at 642. Rather, the Supreme Court concluded in *Davis* that a school district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of harassment "of which it had actual knowledge." *Id.*

MSD argues that "[t]here is no evidence indicating that MSD had knowledge of the alleged bullying until after it occurred." (*Reply to Pl.s' Mem. In Opp. To Def.s' Mot. For Summ. J.* at 10, Dkt. 57.) The record does not support this contention. Plaintiffs have submitted an excerpt from the administrative hearing testimony of a Guidance Counselor

at Centennial High School, who testified that D.A. (M.A.'s mother) raised the bullying

issue in 2009 when she came to the school to discuss M.A.'s final grades for that year.

(Dkt. 55-8.) One of M.A.'s peers testified in the administrative proceedings that M.A.'s

physical education teacher was present during times when M.A. was being harassed.

(Dkt. 55-23.) The transcript of a meeting between D.A. and MSD personnel dated

September 27, 2010, indicates that D.A. again raised the issue of bullying during the

meeting. (Dkt. 55-26 at 17-18.)[11] And another student, M.A.'s peer mentor identified as

A.C., testified that bullying occurred during the 2011-2012 school year. (Dkt. 55-3.)

Viewing the facts in the light most favorable to Plaintiffs and taking the above

facts as true as the Court must at this stage, the Court finds that a genuine dispute exists

as to whether MSD had actual knowledge of the bullying.

e.   *Deliberate indifference*

The last factor in the peer-on-peer harassment analysis requires the plaintiff to

demonstrate that the school district was deliberately indifferent to the disability-based

harassment. According to the Ninth Circuit, "[d]eliberate indifference requires both

knowledge that a harm to a federally protected right is substantially likely, and a failure

to act upon that likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.

2001). In the context of peer-on-peer harassment, when considering deliberate

indifference, the focus is on "the conduct of the funding recipient, not the alleged

harasser." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir.

---

[11] MSD's transcription notes form the September 27, 2010 meeting differ from D.A.'s
transcription. For the purposes of this discussion, the Court is required to view the facts
in the light most favorable to the plaintiffs.

MEMORANDUM DECISION AND ORDER - 30

2007). A school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective in stopping harassment. *See Davis*, 526 U.S. at 648. The recipient of federal funding "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 649. Under this factor, the plaintiff must show that the school district's deliberate indifference subjected the disabled student to further discrimination. *See Williams*, 477 F.3d at 1296.

A look at what does not constitute deliberate indifference is instructive. In *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008), a disabled middle school student was involved in ongoing physical and verbal altercations with other students, leading to the student complaining that he was being bullied and harassed. 552 F.3d at 449. The Sixth Circuit found that the school's response did not constitute deliberate indifference:

> The record shows that [the middle school] responded to all of the alleged incidents involving S.S. of which it was made aware, and that its responses included conducting individual and group interviews with S.S.'s classmates in an attempt to determine who was at fault, instructing S.S.'s classmates not to taunt him, arranging for outside speakers to talk to the students about name-calling, identifying related topics for discussion at school assemblies and in small groups, monitoring S.S., at times separating S.S. from other students who had been involved in the altercations, holding a mediation session between S.S. and another student, disciplining both S.S. and the other students who were found to be at fault, calling the police, having the police talk to an offending student, and calling the other students' and S.S.'s parents to discuss the disciplinary problems.

5323d at 445.

**MEMORANDUM DECISION AND ORDER - 31**

It is clear, however, that a school's failure to take any action to prevent future harassment does constitute deliberate indifference where the other four factors are met. *See K.M. v. Hyde Park Central School District*, 381 F. Supp. 2d 343 (S.D. N.Y. 2005). Here, Plaintiffs have submitted the administrative hearing testimony of the vice-principal at Centennial High School, which indicates that, after learning of a reported incident in which M.A. was bullied, little investigation was taken and the school's own policy regarding the treatment of such incidents was not followed. (Dkt. 55-19.) If Plaintiffs allegations are to be believed, MSD never investigated or took any steps to prevent or remediate the harassment.

### 3.      Conclusion on the bullying issue

Applying the above standards to the instant case, the Court finds that there are triable issues of fact precluding summary judgment on Plaintiffs' bullying claim. Viewing the facts in the light most favorable to the non-moving party, the Court concludes that a reasonable juror, looking at the evidence discussed above, could conclude that M.A. was subjected to severe and pervasive disability-based harassment by his peers, that this harassment was known to teachers and administrators at MSD, and that it altered the conditions of M.A.'s school experience and deprived M.A. of a free appropriate public education. MSD's motion for summary judgment will therefore be denied on this issue.

## 2.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 53), requests that the Court rule as a matter of law on four discrete issues:

**MEMORANDUM DECISION AND ORDER - 32**

1. M.A.'s transfers between MSD and BSD constituted a "change in placement" under the Rehabilitation Act's regulations;

2. BSD and MSD failed to timely reevaluate M.A. following the changes in placement;

3. BSD failed to reevaluate M.A. annually as required by its policy; and

4. The evaluation conducted by BSD was insufficient as a matter of law.

(*Pl.s' Mot. For Partial Summ. J.*, Dkt. 53.)

These requested rulings correspond to requirements contained in the regulations promulgated by the Department of Education under Section 504. Specifically, 34 C.F.R. § 104.35 requires school districts who receive federal funding to evaluate and establish an initial "placement" for disabled students. Once that initial "placement" is established, under the regulations school districts must reevaluate students prior to any subsequent "significant change in placement." 34 C.F.R. § 104.35(a).

As the School Districts correctly point out in their opposition to Plaintiffs' motion, a finding that a change of placement occurred would trigger various duties on the part of the School Districts and the second, third and fourth items upon which Plaintiffs seek summary judgment are premised upon the Court finding, as a matter of law, that a change of placement occurred. (*See Def.s' Resp. to Pl.s' Mot. For Partial Summ. J.* at 2, Dkt. 56.) Ultimately, Plaintiffs ask the Court to rule as a matter of law that the School Districts failed to comply with the regulations and that such failures violated Section 504. (*Mem. In Supp. Of Pl.s' Mot. For Partial Summ. J.* at 7, Dkt. 53-1 ("The Court should thus grant

Plaintiffs' Motion and find that BSD and MSD violated Section 504 by failing to reevaluate Plaintiff.").)

The starting point of the Court's analysis begins with recognition of the unfortunate fact that this litigation—which not only includes this case, but four additional federal cases involving M.A., his parents, and the School Districts—has been prolonged and mired in confusion. This confusion appears to stem from the parties' apparent unfamiliarity with the nature and operation of the two federal statutes at play in these cases—the IDEA and Section 504 of the Rehabilitation Act—once the cases reach federal court. Indeed, the underlying facts of this case involving M.A. and the School Districts has resulted in four administrative proceedings (two under the IDEA and two under Section 504), three lengthy administrative evidentiary hearings (each resulting in voluminous administrative records), and five separate federal actions (two appeals from administrative proceedings under the IDEA, two purported appeals from the hearing officer's administrative decision under Section 504, and the current action before the Court).

The amount of litigation this case has produced, however, is only part of the story. After Plaintiffs filed their appeals in this Court from the hearing officer's decision in the Section 504 administrative proceedings, and after the merits of those cases were fully briefed, shortly before the Court was to hear arguments on the parties' briefing, the School Districts filed motions to dismiss those cases—arguing that the Court lacked subject matter jurisdiction to entertain an appeal from an administrative proceeding under Section 504. *See* Case Nos. 1:12-cv-00105-CWD and 1:12-cv-00106, Dkt. 27,

**MEMORANDUM DECISION AND ORDER - 34**

*Memorandum Decision and Order* (granting the School Districts' motions to dismiss for lack of jurisdiction). As it turns out, the School Districts were correct and the Court dismissed the improper appeals and allowed M.A. and his parents to amend their complaint in this case—adding any potentially cognizable claims under Section 504 that may have been raised in the improper administrative appeals that were not already part of their claims in this case. (*Id.*)

Plaintiffs now argue that the School Districts' alleged failure to comply with the regulations promulgated by the Department of Education should result in the Court ruling,  as a matter of law, that these failures constitute a violation of Section 504. Plaintiffs' argument, however, is based on a proposition that has been rejected by the courts. A showing that a school district violated the regulations under Section 504—or even a showing that a school district denied a student a FAPE under the regulations— does not necessarily constitute a violation of Section 504 in and of itself for purposes of the private cause of action proceeding in this Court. As one federal court has noted, "a school does not violate § 504 merely by failing to provide a FAPE, by providing an incorrect evaluation, by providing a substantively faulty individualized education plan, or merely because a court would have evaluated [a] child differently. *Ms. H. v. Montgomery County Bd. of Educ.*, 784 F. Supp. 2d 1247, 1263 (M.D. Ala. 2011) (quotations and citations omitted). As the Ninth Circuit has indicated, a violation of Section 504's regulations, solely in themselves, does not give rise to a private right of action under the Rehabilitation Act. *Mark H. v. Lemahieu*, 513 F.3d 922, (9th Cir. 2008). To establish a violation of Section 504, something more must be shown: "A plaintiff must also

demonstrate some bad faith or gross misjudgment by the school or that [the student] was discriminated against solely because of his disability." *Ms. H.*, 784 F. Supp. 2d at 1263 (quotation marks and citation omitted).

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Looking at this rule as a starting point in addressing Plaintiffs' motion for summary judgment, the Court was left asking upon what claim—or part of a claim—were Plaintiffs seeking summary judgment. That question remains unanswered by the parties.

The statutory text of Section 504 is short, straightforward, and provides in pertinent part that:

> No otherwise qualified individual with a disability in the
> United States . . . shall, solely by reason of her or his
> disability, be excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Unlike the IDEA, Section 504's statutory text does not create a number of procedures that a school district must follow to comply with the statute. *See Sellers v. Sch. Bd. of Mannassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998) ("Whereas [the] IDEA affirmatively requires participating States to assure disabled children a free appropriate public education . . . Section 504 of the Rehabilitation Act instead prohibits discrimination against disabled individuals."). To establish a prima facie case of discrimination under Section 504, the plaintiff must prove that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise

MEMORANDUM DECISION AND ORDER - 36

discriminated against with regard to a public entity's services, programs or activities; and (3) such exclusion or discrimination was by reason of his disability. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999).

The Department of Education has promulgated regulations under Section 504. These regulations reiterate that qualified disabled persons are due fair treatment, and generally must be provided an opportunity to participate in aids, benefits, or services provided to the non-disabled. 34 C.F.R. § 104.4. They also go further and speak with more specificity, including the provision raised by Plaintiffs in this case—that school districts must evaluate students who are suspected of needing special education or related services and reevaluate such students when a change in placement occurs. *See* 34 C.F.R. 104.35.

A private right of action to sue a school district exists under Section 504. *Mark H.*, 513 F.3d at 930. To state a claim for compensatory relief under Section 504, a plaintiff must show intentional discrimination. *Id.* at 938. That standard may be met by a showing of deliberate indifference. *Id.* If the School Districts in this case ignored the regulations that the Department of Education has ordered it to follow to ensure proper treatment of disabled students, this may constitute evidence that they acted with deliberate indifference. *Id.* There is not, however, a private right of action to enforce specific regulations under Section 504 without a showing that the particular regulation is "tightly enough linked to § 504 that [it] authoritatively construe[s] that statutory section, rather than impose new obligations." *Id.* at 922. Plaintiffs have failed to explain how the alleged

**MEMORANDUM DECISION AND ORDER - 37**

violations of the regulations apply in this case to their discrimination allegations. Such a failure is fatal to their motion for summary judgment.

In sum, under Fed. R. Civ. P. 56(a), the moving party is required to identify the claim or defense (or the part of the claim or defense) on which he or she is moving for summary judgment. Here, Plaintiffs have not explained the nexus between a finding that the School Districts failed to follow the regulations and how that failure would establish an element of their Section 504 claim. The Court is left asking the following questions: Assuming there was a change of placement within the meaning of the regulations, then what? What will Plaintiffs do with that legal ruling? Which element or elements of Plaintiffs' discrimination claim does the sought after ruling relate to?

As the court stated in *Ms. H.*, "[d]ue to the legal uncertainty in this area of law, and the parties' failure to inform the court the standard under which it is to evaluate this claim, the court concludes that neither party has met its summary judgment burden to inform the court of the basis for its motion." 784 F. Supp. 2d at 1269-70. Plaintiffs' motion for partial summary judgment will be denied.

**3.    Plaintiffs' Motion to Terminate or Limit the Deposition of M.A.**

Following Defendants' notification that they intended to depose M.A., Plaintiffs moved the Court for an order terminating or limiting the deposition under Fed. R. Civ. P. 30(d)(3)(A). (*Pl.s' Mot. To Terminate or Limit the Dep. Of M.A.*, Dkt. 47.) Under Rule 30(d), a party may move the court "to terminate or limit [a deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The Rule also provides

MEMORANDUM DECISION AND ORDER - 38

that the Court "may limit [the deposition's] scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B). Rule 26(c), which is referenced in Rule 30(d), allows the Court to, among other things, forbid inquiry into certain matters during depositions and designate persons who may be present. *See* Fed. R. Civ. P. 26(c)(1)(D) and (E).

In the motion and the accompanying affidavit submitted by M.A.'s treating psychologist, Plaintiffs argue that any deposition of M.A. would be inherently unfair due to his disability-related communication deficits. Plaintiffs also argue that questions posed to M.A. concerning the criminal offense that led to M.A.'s incarceration could result in psychological trauma. Finally, Plaintiffs argue that, if the Court is unwilling to terminate or limit the scope of the deposition, M.A.'s treating psychologist should be allowed to attend the deposition as a support person.

The Court addressed these issues with the parties during the November 28, 2012 hearing. Based upon the parties' briefing, the accompanying affidavits, and the discussion with the parties during oral argument, the Court finds that M.A.'s deposition is appropriate in this case and will be allowed. The most important consideration in the Court's ruling on this issue is the fact that the Court is confident that the experienced trial attorneys involved appreciate the special circumstances involved with conducting such a deposition and will respect appropriate boundaries in light of these special circumstances. The Court has no reason to believe that the School Districts are seeking the deposition to annoy, embarrass or oppress the Plaintiffs or to cause unnecessary harm to M.A.

Concerning the scope of the deposition, because Plaintiffs' are seeking damages from MSD related to the criminal conviction that lead to M.A.'s incarceration at the

MEMORANDUM DECISION AND ORDER - 39

Juvenile Detention Center where educational services were provided by BSD, the Court finds that questions concerning that incident are properly within the scope of the deposition.

The Court agrees with Plaintiffs, however, that the presence of M.A.'s treating psychologist during the deposition should be permitted. As discussed during the hearing, the Court will allow the presence of M.A.'s treating psychologist during the deposition as a support person. In an effort to address Defendants' concern that M.A.'s psychologist might coach M.A. on what to say during breaks, Plaintiffs' attorneys are directed to instruct the psychologist prior to the deposition on his or her role as a support person and what comments during breaks would be proper and improper. The Court is confident that the attorneys in this case know what would be proper and improper and will not specifically enumerate what the psychologist may or may not say to M.A. The same admonition regarding coaching of M.A. regarding his testimony applies to M.A.'s parents.

As indicated during the hearing, the Court will make itself available to resolve any disputes that may arise during the deposition. With that in mind, the parties are directed to inform the Court of the date when the deposition will take place so that the Court can be available via telephone in the case that a dispute arises. In the case that a dispute arises, the parties are directed to contact Chambers at (208) 334-9111.

**4.    Defendants' Motion to Strike**

As indicated above, on December 10, 2012, the Court granted the School Districts' motions to dismiss M.A.'s parents' purported appeals from the Section 504

MEMORANDUM DECISION AND ORDER - 40

administrative proceedings. *See* 1:12-cv-00105-CWD, (Dkt. 27); and 1:12-cv-00106-CWD, (Dkt. 27). In the two orders dismissing those cases, however, the Court granted M.A. and his parents leave to amend their complaint in this case—which also asserts claims under the Rehabilitation Act against the School Districts—raising any additional claims under Section 504 (or additional facts in support of the Section 504 cause of action) that may have been included as part of the improper administrative appeals but not included as part of Plaintiffs' claims in this case.

In response to the above order, Plaintiffs filed a Second Amended Complaint, (Dkt. 74), adding factual allegations and a third count to their complaint. Count III of the amended complaint seeks relief under 42 U.S.C. § 1983 for Defendants' alleged violations of Plaintiffs' right to Due Process. Specifically, Plaintiffs allege that "Defendants created a sham Section 504 administrative hearing process, by leading Plaintiffs to believe that they would be afforded a fair and impartial hearing with a right to appeal . . . then by denying Plaintiffs that right." (*Pl.s' Second Am. Compl.* at ¶ 105, Dkt. 74.) According to Plaintiffs, the alleged sham 504 process "deprive[d] Plaintiffs their rights under the Constitution and laws of the United States, including their right to due process under the Due Process Clause of the Fourteenth Amendment." (*Id.* at ¶ 106.)

The School Districts now move the Court for an order striking Count III from Plaintiffs' amended complaint. (*Def.s' Mot. To Strike Count III of Second Am. Compl.*, Dkt. 76.) The School Districts argue that Plaintiffs' Section 1983 claim exceeds the Court's order granting Plaintiffs leave to amend their complaint and will require re-opening discovery and further delay in an already-delayed case. In response, Plaintiffs

**MEMORANDUM DECISION AND ORDER - 41**

concede that the newly raised Section 1983 claim falls "outside a literal reading of the Orders." (*Mem. In Opp. To Def.s' Mot. To Strike Count III of Second Am. Compl.* at 3, Dkt. 79.) Plaintiffs argue, however, that even if the newly added count is stricken for being outside the literal reading of the Court's order, Plaintiffs will nonetheless be able to move the Court for leave to amend their complaint under Fed. R. Civ. P. 15. In their Reply to Plaintiffs' argument, the School Districts argue that, because a scheduling order has already been entered in this case, the good cause standard contained in Rule 16 of the Federal Rules of Civil Procedure would apply rather than the more liberal policy favoring amendments contained in Rule 15(a). (*Reply Mem. In Supp. Of Def.s' Mot. To Strike Count III of Second Am. Compl.*, Dkt. 80.)

Having reviewed Plaintiffs' Second Amended Complaint and the order granting Plaintiffs leave to amend, the Court agrees with the School Districts that Count III of the amended complaint exceeds the scope of the Court's order. On that basis, Defendants' motion to strike will be granted.

Plaintiffs have indicated, however, that if the motion to strike is granted they intend on filing a formal motion to amend. Such a motion would not be well-taken and the Court will take the time here to express why. It is well-settled that a party seeking to amend a pleading after the date specified in the scheduling order must first show "good cause" for the amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that the amendment was proper under Rule 15. *Johnson v. Mammoth*, 975 F.2d 604, 608 (9th Cir. 1992). Rule 16's "good cause" standard primarily considers the diligence of the party seeking the amendment. *Id.* at 609.  Assuming for the purpose

**MEMORANDUM DECISION AND ORDER - 42**

of this discussion that good cause exists due to the fact that the decision in the Section 504 administrative proceedings was not issued until after the initial complaint was filed in this case, Plaintiffs would nonetheless be required to satisfy Rule 15.

Fed. R. Civ. P. 15(a) provides that leave to amend pleadings shall be freely given when justice so requires. In addressing Rule 15, the Ninth Circuit has indicated that the court should be guided by consideration of whether the amendment would prejudice the opposing party, whether it is sought in bad faith, whether the proposed amendment would be futile, and whether the amendment would cause undue delay. *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984).

In this case, the consideration of undue delay weighs heavily in favor of not allowing the amendment. This case was filed almost two years ago and was scheduled for trial on November 27, 2012. That trial date was vacated and has not been reset. Moreover, this is the first time that a theory under § 1983 has been raised. The facts giving rise to such a claim were available to Plaintiffs well before the amended complaint was filed and were certainly available, at the latest, after HO Uranga issued her administrative decision.[12]

This case was filed when M.A. was 17 years of age and still attending high school. The Court has no doubt that all parties involved in this litigation hoped to resolve the case before the time came for M.A. to graduate. That hope, however, did not come to fruition.

---

[12] The Court also notes that Plaintiffs did not raise the potential existence of a claim under § 1983 during the last hearing in the Section 504 purported appeal casess, when the Court discussed with the parties the procedural quagmire presented by the five cases before the Court.

**MEMORANDUM DECISION AND ORDER - 43**

The time for M.A. to graduate with his peers came and passed without any resolution.

M.A., however, has not graduated. Shortly before M.A. was scheduled to graduate, his

parents filed a motion in one of the IDEA cases asking the Court to enjoin MSD from

allowing M.A. to graduate. The procedural peculiarities of the IDEA need not be

discussed in this case, but the motion was filed so that the administrative appeal would

not be rendered moot by M.A.'s graduation and the statute contains what is known as the

"stay-put" provision, which requires the educational agency to keep the student in his or

her "then-current educational placement" until the dispute under the IDEA is resolved.[13]

Based upon the "stay-put" provision, the Court granted the motion. *See* Case No. 1:11-

cv-00320-CWD, Dkt. 49. So M.A. remains in limbo—having completed his courses to

graduate according to MSD, but still officially a student at Centennial High School.

  The Court is not willing to allow more delay in this case. Count III of Plaintiffs'

amended complaint raises an entirely new legal theory. The claim likely would require

the re-opening of discovery and the opportunity for another round of dispositive motions.

If further discovery and another round of dispositive motions were allowed, the trial in

this case undoubtedly would be pushed back several additional months. Plaintiffs have

indicated that more discovery will be needed regardless of whether the Section 1983

claim is allowed. The Court seriously questions that proposition as the parties have

evidence from three lengthy administrative proceedings at their disposal, not to mention

---

[13] That particular motion led to what the Court considered to be a rather unseemly dispute
between MSD and M.A.'s parents over whether M.A. should be allowed to walk in the
graduation ceremony with his peers if the Court granted the motion for a stay-put order.

**MEMORANDUM DECISION AND ORDER - 44**

the discovery that was conducted during the course of this case and any materials that formed part of the four additional federal cases before the Court.

The Court's position on this matter is also guided by the fact that the factual allegations contained in Plaintiffs' Section 1983 claim—alleging a 'sham' Section 504 process—also appear in Count II of Plaintiffs' amended complaint alleging violations of the Rehabilitation Act. Thus, it is unclear what Plaintiffs will be losing without the addition of Count III other than an additional legal theory and the further delay of what already has been protracted litigation.

Based on the above discussion, Defendants' motion to strike will be granted. Further, if Plaintiffs intend on filing a motion to amend their complaint, they may find guidance in the above discussion on how the Court most likely would rule on such a motion, governed by Rules 15 and 16 of the Federal Rules of Civil Procedure.

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that**:

1.      Plaintiffs' Motion to Terminate or Limit the Deposition of M.A., (Dkt. 47), is GRANTED in part and DENIED in part in accordance with the above memorandum decision;

2.      Defendants' Motion for Summary Judgment, (Dkt. 51), is DENIED;

3.      Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 53), is DENIED; and

4.     Defendants' Motion to Strike Count III of Second Amended Complaint, (Dkt. 76), is GRANTED.

**IT IS FURTHER ORDERED that** the **trial** in this case shall be re-set to begin **July 8, 2013, at 1:30 p.m.** at the Federal Building and Courthouse in Boise, Idaho.

**IT IS FURTHER ORDERED that** a **telephonic status conference** shall be held on **February 26, 2013, at 9:30 a.m.**, during which the Court and parties will discuss whether the parties anticipate filing additional motions in limine and other pre-trial submission deadlines. Counsel for Plaintiffs is directed to initiate the call and when all parties are on the line, connect to the courtroom at (208) 334-1504.

Dated: **February 12, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 46**